## Vogue Manufacturing Company v. Cadillac Hosiery Company

338

*Gordon W. Gerber*, for plaintiff.
*David W. Niesenbaum*, for defendant.

KUN, P. J., May 13, 1952.—Complaint was filed by plaintiff against defendant to recover for ladies' nylon stockings allegedly ordered by defendant from plaintiff. Defendant filed preliminary objections to the complaint, raising the question of jurisdiction of the court on the grounds: (1) That defendant is a foreign corporation and it does not do business in Philadelphia County, and (2) the person upon whom service of process was made at B Street and Allegheny Avenue in Philadelphia was not an employe of defendant and not authorized to accept service in its behalf.

This is not a case in which it is claimed that defendant is doing business in the county merely because of solicitation of business here, or because of mere acts of courtesy on the part of solicitors in connection therewith. The case of Lutz v. Foster & Kester Co., Inc., et al., 367 Pa. 125, and the like cited by defendant, are therefore not apposite. As pointed out in that case, the question as to whether a foreign corporation is doing business within the Commonwealth, so as to subject it to the jurisdiction of the Pennsylvania courts, rests fundamentally upon a conclusion of ultimate fact. Subject to the ruling on the effect of the mere solicitation of business, as to which the law is well established, a point not involved in the matter before us, each case in a sense is sui generis and the

facts in relation thereto must be examined in order to determine whether there is a sufficiency in quantity and quality of acts on the part of the foreign corporation, or those acting for it within the jurisdiction, to justify the conclusion that it is "doing business" within the county in a legal sense. If in point of fact the foreign corporation so conducts its activities, directly or otherwise, within the county as to give a reasonable impression to business people who deal with it that it does do business in the jurisdiction, the court should not be astute to find ways to declare it outside the jurisdiction of the court. In the light of these considerations, we will examine what defendant has done in this case.

At the outset we find, according to the depositions, that in all the correspondence plaintiff had with defendant, the latter used stationery headed with the name of defendant company, and underneath the name in bold type the statement: "Plant—B Street above Allegheny Avenue, Philadelphia 22, Pennsylvania". This is followed by an imprint of a factory building which has stamped on it defendant's name, "Cadillac". This is followed by an address in Detroit, Mich.; in other words, a clear statement by defendant that its "plant" is in Philadelphia and its office is in Detroit. It would appear to us that on such a representation alone defendant ought not to be heard to say that it is not "doing business" in Philadelphia. Non constat, except for its representation to plaintiff that it has a plant here, plaintiff would not have dealt with defendant for the very reason that in case it had to litigate anything with defendant, it would not wish to go to Michigan for that purpose. We think this in itself is a sufficient basis to apply the principle of estoppel, otherwise defendant would be permitted to take advantage of its own misrepresentation. We put it that way because in the depositions defendant's president swore

that they had no plant in Philadelphia, that in point of fact what is at B and Allegheny Avenue is a plant of the Rex Finishing Company.

Aside from the foregoing, however, the depositions made it abundantly clear that the activities of defendant company, through the agency of the Rex Company, in relation to defendant's property within the jurisdiction and in relation to defendant's business operations, were quite sufficient to charge defendant with "doing business" within the county, however it is attempted to cover it up. It was disclosed that defendant's business consisted of buying "graige" goods, which we understand to be raw materials used for the purpose of manufacturing ladies' nylon stockings. About 99 per cent of this sort of finishing for defendant company is done by the Rex Company at B and Allegheny Avenue. Now, if all that the Rex Company did for defendant was the processing of goods for it, and shipped them back to defendant, it could not be said that defendant was "doing business" in this county. However, what brings defendant into the area of doing business in this county is that not only does the Rex Company receive the raw materials in defendant's name and do the finishing for defendant, but it ships the finished products directly from its plant in Philadelphia to customers of defendant, in which respect the Rex Company acts as agent for defendant in doing that business. Moreover, the interesting fact was disclosed by the depositions that mail is addressed to defendant at the Philadelphia "plant", which is opened by employes of the Rex Company, and some of it is sent on to defendant at its Detroit office but other mail which has to do with defendant's business in relation to the processing or the shipment of its goods from the plant in Philadelphia is distributed in the Philadelphia plant to the appropriate departments. It is an entirely irrelevant consideration that the Rex

Company does all this for defendant in Philadelphia as an accommodation as claimed, without a specific consideration therefor. No doubt if consideration were necessary it was taken care of in the price charged for finishing the goods, because it is not to be supposed that the Rex Company would pack and ship defendant's goods to its customers without regard to the labor costs and the costs of containers involved. That the practice referred to is more or less a continuous one is revealed by the testimony of the president of defendant company, who stated that the operations referred to are under no set agreement but that the Rex Company "just awaits instructions on particular orders", which means that the Rex Company makes shipments of defendant's goods from the Philadelphia plant from time to time. This was reinforced by the testimony of the witness for defendant, the president of the Rex Company who, when questioned on the shipping procedure, stated:

". . . that is right because there are *lots of times* when a shipment (from the Philadelphia plant to defendant's customers) made to a firm that through something or other they won't accept the shipment, the carrier in turn always returns the shipment to its original destination (the Philadelphia plant). You could not ship something from B and Allegheny Avenue to Atlantic City and show Cadillac, 133 Grant River, Detroit. . . ."

That is to say, shipments are made from the Philadelphia plant to customers of defendant and are also returned to the Philadelphia plant from customers of defendant for further disposition. In handling such transactions for and on behalf of defendant, the Rex Company is acting as agent for defendant, and by this process defendant is "doing business" in Philadelphia.

We are well satisfied on the basis of all the evidence developed through the depositions and the rational

implications therefrom that the activities of defendant in Philadelphia County, through the agency of the Rex Company, amounted to "doing business" in Philadelphia. This is in harmony with defendant's representations on its letterhead used in its dealings with plaintiff, that it has a plant in Philadelphia, giving a "picture" of it. It follows that service of process on an employe of the Rex Company, which was acting as agent for defendant in this county in the manner described, was a good service.

Accordingly, the preliminary objections are overruled, with leave granted to defendant to file an answer on the merits within 20 days.